*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SUTTON, Minor.

UNPUBLISHED
June 13, 2025
11:09 AM

Nos. 372593 and 372594
Monroe Circuit Court
Family Division
LC No. 23-028351-NA

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondents appeal of right the trial court's order terminating their parental rights to their minor child, MRS. They contend that respondent-mother's due-process rights were violated because she was not given updated case service plans, that insufficient evidence was presented to support the trial court's findings that statutory grounds for termination existed, and that termination of parental rights was not in MRS's best interests. We affirm.

## I. FACTUAL BACKGROUND

Respondent-mother has a history of mental-health instability resulting from schizophrenia, depression, and anxiety. Respondent-father, who suffers from bipolar I disorder, has a long history of abusing controlled substances, including heroin and methamphetamine. He made unsuccessful attempts at residential and outpatient drug-rehabilitation treatment, he was imprisoned for six years for armed robbery, and his parental rights to two other children were involuntarily terminated in earlier proceedings.

In February 2023, when MRS was approximately three months old, she was removed from respondents' care and custody because of respondent-mother's mental instability and respondent-

---

[1] *In re MRS*, unpublished order of the Court of Appeals, entered October 23, 2024 (Docket Nos. 372593 and 372594).

-1-

father's substance abuse and criminality. Respondents were homeless and indigent at that point. An adjudication order was entered in June 2023 after a bench trial.

The trial court terminated respondents' parental rights in September 2024 because, despite more than 15 months of reasonable family-reunification efforts, respondents had not substantially complied with, or benefited from, their case service plans. At the time of the termination hearing, respondent-mother was continuing to refuse to participate in recommended individual therapy, and respondent-father was continuing to test positive for illicit drugs and had various parole violations. Respondents could not secure stable housing, having moved many times. Further, they could not maintain employment, and they denied the seriousness of their mental-health issues that affected their ability to properly parent.

On September 4, 2024, the trial court rendered its ruling from the bench, determining that statutory grounds for termination of respondents' parental rights existed and that termination was in the best interests of MRS. By that time, the paternal grandparents—who were estranged from respondents—had properly cared for MRS for more than 18 months and were willing to adopt her. After the trial court issued a written termination order on September 6, 2024, respondents appealed of right.

## II. LEGAL ANALYSIS

On appeal, respondents fault the trial court for violating respondent-mother's due-process rights, rendering unsupported findings that statutory grounds for termination existed, and deciding that termination was in MRS's best interests. We review for clear error the finding that a statutory ground for termination has been proved by clear and convincing evidence. MCR 3.977(K); *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). Likewise, the trial court's finding that termination is in a child's best interests is reviewed for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). In order to be deemed clearly erroneous, a trial court's finding must be more than possibly, or even probably, wrong. "A decision qualifies as clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted). A trial court's interpretation and application of statutes and court rules is reviewed de novo. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). "Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law," subject to review de novo. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). With these standards in mind, we shall address each of respondents' claims in turn.

### A. DUE PROCESS

Respondent-mother asserts that she was deprived of her fundamental right to the care and custody of her child without adequate notice of what she was expected to achieve, in violation of her constitutional right to due process. A well-established tenet of due process is that parties must be given adequate notice of what they must do to avoid deprivation of a fundamental right. *Dep't of State Compliance & Rules Div v Mich Ed Ass'n-NEA*, 251 Mich App 110, 116-117; 650 NW2d 120 (2002). Hence, respondent-mother insists petitioner "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to

achieve reunification." *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 3 (quotation marks and citation omitted).

To preserve an issue for appellate review, the issue must be presented in the lower court. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Respondent-mother did not raise this issue in the lower court, thereby leaving this claim unpreserved. In termination cases, unpreserved issues are reviewed for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011); *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App at 135. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9. The asserting party bears the burden of persuasion with regard to prejudice. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 70 (2020).

According to MCL 712A.18f(1) and (2), a case service plan must be in writing, and it must "be available to the court and all the parties to the proceeding." The case service plan is presented to the trial court before an order of disposition, and the trial court "may order compliance with all or any part of the case service plan as the court considers necessary." MCL 712A.18f(4).

The record does not support respondent-mother's claim that her due-process rights were violated because petitioner did not implement an updated written case service plan at each review and permanency-planning hearing. Respondent-mother claims that, although petitioner submitted a June 29, 2023 updated plan at the July 2023 initial disposition, plans submitted at future hearings were mere copies of the initial March 1, 2023 case service plan. Thus, respondent-mother contends that she was not correctly apprised of the barriers she had to overcome to achieve reunification. Respondent-mother further asserts that petitioner accelerated the date for a review hearing from 90 days to 57 days following the March 5, 2024 hearing, even though the trial court concluded that respondent-mother was making progress. Respondent-mother insists that all those alleged errors affected the outcome of the proceedings because the case service plan was not regularly tailored to her current needs to accomplish reunification, so the termination of her parental rights flowed directly from the violation of her due-process rights.

We find that the case service plans and periodic updated court reports adequately reflected respondent-mother's barriers to reunification, which did not significantly change during the course of the proceedings. Respondent-mother was repeatedly notified of the issues that had brought her child into care and that had persisted throughout the case: mental instability; inadequate housing; and inadequate income. At the July 7, 2023 initial disposition, respondent-mother acknowledged that she had reviewed petitioner's proposed case service plan that was attached to the initial court report. Further, respondent-mother's March 1, 2023 case service plan was attached to petitioner's updated court reports and e-mailed to respondent-mother's counsel, it was admitted as an exhibit, and it was reviewed by the court at all review and permanency-planning hearings. The caseworker explained the rationale for shortening the time for periodic review and said that she had discussed the possibility of a goal change with her supervisor because respondents were not making adequate progress and MRS had been in care for more than a year.

Also, respondent-mother attended the periodic review hearings and heard the caseworker testify about petitioner's reunification efforts and respondent-mother's progress on her case service plan. Respondent-mother testified at the permanency-planning hearing in May 2024 that she had reviewed her case report, and respondent-mother explained her efforts to satisfy each requirement of her case service plan. Moreover, respondent-mother has not identified additional services that should have been included in her case service plan to assist her in overcoming her mental-health issues, unstable housing, or inadequate income. Thus, we hold that any failure to comply with the technical requirements of MCL 712A.18f(5) did not affect the outcome of the proceedings in the trial court or otherwise prejudice respondent-mother.

## B. STATUTORY GROUNDS FOR TERMINATION

Both respondents insist that the record does not support the trial court's determination that there were statutory grounds for termination of parental rights. The trial court decided to terminate respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), (and (i) as to respondent-father), which state as follows:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

"If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of [a] respondent's parental rights." *In re Sanborn*, 337 Mich App 252, 273; 976 NW2d 44 (2021). Accordingly, we must consider whether the trial court clearly erred in finding at least one statutory ground for terminating the parental rights of each respondent.

## 1. RESPONDENT-MOTHER

Respondent-mother contends that the trial court committed clear error when it decided that termination of her parental rights was warranted under MCL 712A.19b(3)(c)(*i*) because the record did not reflect that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering MRS's age. We reject that contention.

The caseworker said that respondent-mother's untreated mental-health issues significantly contributed to MRS's removal from her care, but respondent-mother only partially complied with measures designed to address those issues. Although respondent-mother completed a mandatory psychological evaluation, she only partially complied with the evaluator's recommendations. For the evaluation, respondent-mother stated that she had been previously diagnosed with postpartum depression, attention-deficit/hyperactivity disorder, and anxiety. She further reported that she had been hospitalized in a psychiatric facility on two occasions: once for two weeks after she stopped taking a medication for her bipolar disorder for five days, and again when she reported that she was on "too much medication." But respondent-mother denied suffering from psychosis. Respondent-mother had been diagnosed with major depressive disorder and generalized anxiety disorder, but she only acknowledged she suffered from postpartum depression and anxiety. The psychological evaluation indicated that respondent-mother might not fully understand the gravity of her mental-health issues. The evaluator recommended that respondent-mother participate in an active mental-health counseling plan that was specific as to time, intensity, and duration. The evaluator noted that respondent-mother's inconsistency in attending individual therapy was evident when, despite respondent-mother's reporting that she was attending therapy, some investigation revealed that she was not actively doing so. The evaluator concluded that it was imperative to monitor respondent-mother's mental health if MRS were returned to her home. The evaluator further emphasized that medication management was necessary for respondent-mother to maintain her mental health.

The evidence also established that respondent-mother had been repeatedly hospitalized for psychiatric care. A doctor who treated respondent-mother through December 16, 2023, testified that his diagnosis included disorganized schizophrenia, major depressive disorder with psychotic features, and catatonia. He opined that respondent-mother would return to a psychotic state and, as a result, be unable to care for another person if she stopped taking her medication or participating in individual therapy. Another one of respondent-mother's physicians testified that her depression, anxiety, and schizophrenia revealed themselves in the spring of 2023. Respondent-mother testified that a doctor had attempted to diagnose her with schizophrenia at one time, but that she had refused to accept that diagnosis. Respondent-mother conceded at the adjudication trial that she had been the subject of three prior mental-health petitions. But at the termination hearing, she at first denied, but later conceded, the existence of one such petition.

In September 2023, the approved parenting-time supervisor had such grave concerns about respondent-mother's declining mental health that she refused to supervise visits until respondent-mother was examined by a doctor. The caseworker testified that respondent-mother had reported in November 2023 that she had had enough therapy in her life, so she elected not to participate in individual therapy. At that time, respondent-mother also reported that she no longer wanted to take her prescribed medications, and she was hospitalized within two weeks.

We agree with the trial court that the evidence demonstrated that respondent-mother only minimally followed recommendations and only minimally took part in individual therapy. For her part, respondent-mother continually denied having significant mental-health issues or diagnoses. She also claimed, contrary to the psychological evaluator's specific requirements, that her monthly medication reviews constituted individual therapy. However, respondent-mother's psychological evaluation made clear that medication alone would be insufficient to manage her mental health if it was not accompanied by individual therapy. Therefore, the trial court reasonably concluded that short monthly medication reviews were not a substitute for prescribed individual therapy.

The evidence also revealed that respondent-mother had only partially endeavored to obtain and maintain suitable housing. Respondent-mother claimed that she had had only four residences since the case began, whereas the caseworker and respondent-father testified about approximately eight residences. Respondent-mother initially denied, but later acknowledged, that she had lived in her car and in a hotel for short periods. She also denied, but later admitted, that she was evicted from her residence in December 2023. Respondent-mother's subsequent residence with a relative appeared to be suitable, but she did not have a lease or any other evidence that that arrangement was anything more than temporary.

Finally, although the evidence demonstrated that respondent-mother partially participated in scheduled parenting times, the record showed that visits were cancelled from October 2023 to January 2024 because of respondent-mother's rapidly declining mental health and hospitalization. Although the visits themselves appeared promising, respondent-mother never progressed beyond supervised parenting time. She only partially complied with parenting education. She refused to participate in two programs, and she later claimed that she had completed an online program, but she provided no verification for that claim.

In light of the record established in the trial court, we conclude that the trial court did not clearly err in finding that termination of respondent-mother's parental rights was warranted under MCL 712A.19b(3)(c)(*i*). Simply stated, the record demonstrated that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering MRS's age.

## 2. RESPONDENT-FATHER

We also conclude that the trial court did not clearly err by terminating respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*) because there was sufficient evidence that he failed to comply with, or benefit from, his case service plan. The evidence revealed that he was not able to achieve sobriety and a crime-free lifestyle, or to maintain stable housing or income adequate to meet MRS's needs.

The caseworker testified that respondent-father partially complied with recommendations, but had not completed a substance-abuse assessment, and had tested positive for illicit substances while in a treatment program. Respondent-father reported a sobriety date of April 23, 2024, denied relapsing despite numerous positive drug screens since that time, and maintained that the positive screen results were incorrect and that he was not currently suffering from any drug addiction. He admitted to tampering with four of his drug screens, however, even while repeatedly insisting that his positive screens were invalid. He tested positive for cocaine in June and July 2024 and refused to screen at the agency in late July and August 2024, insisting that the screening procedure violated his privacy. He failed to participate in certain substance-abuse programs ostensibly because doing so could trigger a relapse. Thus, the record supported the trial court's conclusion that respondent-father's longest period of sobriety since the case began was six months.

The record also established that respondent-father failed to control his criminal tendencies. Respondent-father and his parole officer both testified about respondent-father's numerous parole violations, his two arrests, and his incarceration for absconding. His date for parole discharge was extended from August 14 to November 13, 2024, and his parole officer was unaware of a pending misdemeanor larceny charge. Respondent-father's criminality led to prior terminations of parental rights, and his ongoing involvement with the criminal-justice system negatively affected his ability to parent MRS.

Beyond that, the record revealed that respondent-father had only minimally complied with the requirements that he obtain stable housing and maintain employment. He did not have a lease for his current residence, and was never employed for more than six months. In addition, although respondent-father did undergo a psychological evaluation, he did not comply with the evaluator's recommendations in their entirety. During a psychological evaluation in August 2023, respondent-father reported that he had had issues relating to previous diagnoses of depression, bipolar disorder, anxiety, attention-deficit/hyperactivity disorder, and substance-abuse withdrawal. The evaluator's recommendations included continued mental-health services and medication management because the evaluator believed treating respondent-father's mental-health and substance-abuse disorders was necessary for maintaining a safe environment for MRS. Nevertheless, the caseworker testified that respondent-father had been attending monthly medication reviews, but not individual therapy, since August 2023. Finally, although respondent-father attended parent-education classes, he only minimally attended scheduled parenting times. Starting in October 2023 and continuing into 2024, his visits with MRS were infrequent because he had relapsed, was arrested or feared being arrested, or was incarcerated or in residential drug treatment.

For all these reasons, we conclude that the trial court did not clearly err by concluding that respondent-father could not rectify the conditions that led to MRS's removal within a reasonable time, considering the child's age. MRS was 21 months old at the time of the termination hearing, and she had been in relative foster care for 18 of those months. According to the caseworker, the process of achieving family reunification would take approximately an additional year because of both respondents' case-service trajectories. As the trial court observed, respondents' progress had been riddled with backsliding, and on occasion respondents flatly denied the concerns that needed to be addressed. Consequently, the record furnished ample support for the trial court's finding that the statutory ground for termination set forth in MCL 712A.19b(3)(c)(*i*) was satisfied by clear and convincing evidence.

## C. BEST INTERESTS OF THE CHILD

Both respondents assert that the trial court erred in finding that termination of their parental rights was in MRS's best interests. If the trial court finds that there are grounds for termination of parental rights "and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In the trial court, "the preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). On appeal, we review the trial court's best-interest determination only for clear error. *In re Olive/Metts*, 297 Mich App at 40. "In making its best-interest determination, the trial court may consider 'the whole record,' including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016). The trial court may consider the child's need for permanency, stability, and finality, the advantages of a foster home over a parent's home, the parent's history of domestic violence, the parent's compliance with court-ordered treatment plans, the parent's history of visitation with the child, the child's wellbeing while in care, and the possibility of adoption. See *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). As this Court has stated:

> [O]nce a statutory ground is established, a parent's interest in the care and custody of his or her child yields to the state's interest in the protection of the child. Thus, while it is inappropriate for a court to consider the advantages of a foster home in deciding whether a statutory ground for termination has been established, such considerations are appropriate in a best-interests determination. [*In re Foster*, 285 Mich App 630, 635; 776 NW2d 415 (2009) (citations omitted).]

The record reveals that the trial court considered all of the applicable factors when making its best-interest determination. Both the caseworker and the designated parenting-time supervisor testified that there was a good-to-strong bond between respondents and MRS, and that respondents interacted appropriately with her during parenting time. But the caseworker noted that respondents were unable to properly care for MRS, as demonstrated by their inability to maintain progress with their case service plans.

The evidence supported the trial court's conclusion that the foster home offered advantages over respondents' home. The caseworker testified that respondent-mother's mental instability and respondent-father's substance abuse and criminality would likely continue to hamper their ability to parent. Neither respondent could maintain steady employment or suitable housing. The paternal grandparents, in contrast, had provided a safe and stable home for MRS throughout the pendency of the case, meeting all of the child's needs. The caseworker opined that MRS needed permanency, stability, and finality, which neither respondent would be able to provide in the foreseeable future. The caseworker testified, and the child's lawyer-guardian ad litem (LGAL) stated, that MRS, who had been in foster care for 18 of her 21 months, was developmentally on the proper track, having successfully reached her developmental milestones. MRS was bonded with her caregivers, who were willing to adopt her. As a result, the LGAL supported termination.

Respondents' claim that the trial court did not consider MRS's placement with relatives as a factor weighing against termination lacks merit. To be sure, "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether

termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43. The trial court in this case explicitly addressed relative placement when considering the best-interest factors. It acknowledged that MRS was placed with relatives, but concluded that that factor did not outweigh the considerations favoring termination. Further, the record supported the trial court's finding that the relative foster parents had estranged relationships with both respondents. Throughout the case, both respondents and the child's paternal grandmother testified that they had a difficult and toxic relationship and did not communicate well. The paternal grandmother further stated that she was unwilling to supervise parenting time because respondents were disrespectful, angry, and did not listen to requests that were in MRS's interest. Respondent-father opined that his relationship with the paternal grandmother was not good for his sobriety because she was a hypochondriac and her reports of MRS's behavioral struggles following parenting time were untrue. Respondent-mother speculated that the paternal grandparents had slashed respondents' car tires. The LGAL stated at the preliminary hearing that there was an ongoing lack of cooperation and communication between the paternal grandparents and respondents. In addition, during closing arguments, the LGAL noted that there was no familial relationship between them.

For all these reasons, the trial court did not clearly err by concluding that guardianship was not a feasible alternative to termination of respondents' parental rights. Respondents' reliance on *In re L J Lombard*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 367714), is misplaced. There, the trial court erred when, rather than making individualized findings regarding whether a guardianship with the child's maternal grandfather with whom the child was placed would be in the child's best interests, it instead relied on a general policy disfavoring guardianship for children under 10 years old. *Id.* at ___; slip op at 5. In this case, the relative foster parents were supportive of family reunification, if feasible, but were not seeking a guardianship, in contrast to the situation in *In re L J Lombard*. Instead, the relative foster parents offered to provide permanency for MRS through adoption. The child's placement with relatives was duly considered, but termination was ordered "in lieu of placement with relatives," as contemplated by *In re Olive/Metts*, 297 Mich App at 43. Further, the trial court satisfied MCR 3.977(I)(1) and (3) by articulating brief, definite, and pertinent findings and conclusions on all the contested matters, including MRS's placement with relatives.

Affirmed.

/s/ Christopher P. Yates
/s/ Adrienne N. Young
/s/ Randy J. Wallace

-9-